**BARNES & THORNBURG LLP**
Charles G. La Bella, Bar No. 183448
clabella@btlaw.com
Andrew P. Young, Bar No. 326540
andrew.young@btlaw.com
Jordan M. Oliver (admitted *pro hac vice*)
jordan.oliver@btlaw.com
655 W. Broadway, Suite 1300
San Diego, CA 92101
Telephone: (619) 321-5000
Facsimile: (310) 284-3894

Attorneys for Defendants
Sebastian Guthery and Nine2Five LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

NINE2FIVE, LLC (1),
SEBASTIAN GUTHERY (2),

Defendants.

Case No. 23-CR-0179-TWR

**DEFENDANTS' TRIAL MEMORANDUM**

Defendants, Sebastian Guthery and Nine2Five, LLC ("Nine2Five"), by and through undersigned counsel, hereby file their Trial Memorandum in the above-referenced case.

## I. STATEMENT OF FACTS

Kratom (or Mitragyna speciosa) is a leaf from a plant grown in Southeast Asia and a member of the coffee family. Unlike marijuana or other illicit drugs, it is not a scheduled drug and is not regulated by the DEA. To the contrary, it is legally imported and sold in the United States every day in virtually every city and town. When consumed, Kratom's effects can allegedly mimic either stimulants or opioids

depending on the dosage. In 2014, the FDA issued Import Alert 54-15 (the "Import Alert") instructing border officials to detain shipments from importers and businesses who were known to market Kratom for personal consumption. The Import Alert further requested that border officials investigate shipments of Kratom to determine whether the importers were marketing it for human consumption in violation of FDA regulations.

In some limited circumstances not present here, Kratom is an unregulated dietary supplement that the FDA has raised concerns about regarding purported negative health effects, and thus prohibits the *marketing* of Kratom as a dietary ingredient. The FDA does not, however, prohibit the sale of Kratom within the United States. Nonetheless, on February 3, 2023, the government indicted the defendants on fifteen (15) charges ranging from conspiracy to illegal importation to money laundering. Each of these charges revolve around Kratom.

## II. WITNESS LIST

The defendants reserve the right to change the order of, substitute, or add or omit one or more of the witnesses:

1. Clarence Adams
2. Darius Bucinskas
3. Jesse Cretaro
4. Jeff Levinson
5. Mary Winters
6. Samuel Brotman

## III. EVIDENTIARY AND OTHER LEGAL ISSUES

### A. <u>"BY MEANS OF" THE FALSE STATEMENTS IN SECTION 542</u>

The government may argue that the alleged false statements in the invoices, which declared the imported kratom to be green tea, fertilizer, and a product used in dyeing fabric, is a material misrepresentation under 18 U.S.C. § 542 because such

statements were intended to circumvent customs laws and enable kratom to be admitted into the United States. That argument would be misplaced because the indictment charges defendants with importing kratom under the first part of Section 542 – "by means of materially false invoices and materially false statements." *See* Indictment ¶ 12; *see also* 18 U.S.C. § 542 ("Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise *by means of* any fraudulent or false invoice, declaration, affidavit, letter, paper, or *by means of* any false statement . . .") (emphasis added).

The Ninth Circuit interprets the first part of Section 542 that refers to goods entering the United States "by means of" a false statement as requiring the government to prove, as an element of the offense, the materiality of the false statement—that but for the false statement the merchandise would not have been allowed to cross United States borders. *United States v. Rose*, 570 F.2d 1358, 1363 (9th Cir. 1978) ("If the false statement is not material, it cannot be said that the attempt was made to import the merchandise "by means of" the statement). The falsity must be significant to the actual admission of the foods, not merely to the importation process in general. *United States v. Teraoka*, 669 F.2d 577, 579 (9th Cir. 1982) (holding that "by means of" and "material" elements require that the government establish that the alleged false invoices and statements enabled merchandise to enter the United States (in that the truth would have barred entry)).

The government was free to prosecute the defendants without proof of materiality under the latter part of Section 542, which imposes criminal liability purely for *making* a false statement in a customs declaration. *See* 18 U.S.C. § 542 ("Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise . . . mak[ing] any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the marking of any such false statement as to any matter material thereto

without reasonable cause to believe the truth of such statement . . ."). Thus, any argument that the materiality element is met merely by establishing that defendants lied to customs officials about the nature of their merchandise is groundless. *See, e.g., United States v. Corcuera-Valor*, 910 F.2d 198, 200 (5th Cir. 1990) (rejecting similar interpretation of Section 542's "by means of" clause because the government had discretion to prosecute defendants under latter part of statute that does not require proof that false statement was the reason the goods were allowed to enter the United States, but instead opted to indict defendants under the first part of Section 542 that does require such proof). The defendants anticipate that the evidence at trial will demonstrate that during the same time period of the alleged conspiracy, Customs and Border Protection ("CBP") permitted entry of merchandise declared to be kratom and/or "mitragyna speciosa" into the United States, and thus the government will not be able to meet the materiality element of Section 542.

### B. ADVICE OF COUNSEL ISSUE

Defendants anticipate that the evidence at trial will show that Ira Hecht, a once-licensed attorney, provided legal advice to Defendants regarding their marketing of Kratom. The government may argue that any advice of counsel argument on this front would not apply because Mr. Hecht is allegedly a disbarred attorney in Nevada.[1] However, advice of counsel depends on the perception of the individual receiving the legal advice, and thus courts have found that communications with non-attorneys may be privileged in limited circumstances where a client seeks legal advice from an individual who they reasonably, but mistakenly, believe is a licensed attorney. *See, e.g., Gucci America, Inc. v. Guess?, Inc.*, No. 09-cv-4373, 2011 WL 9375, at *2 (S.D.N.Y. Jan. 3, 2011) (although his status was "inactive," communications with an individual who had graduated from

[1] Based upon information and belief, it is the defendants' understanding that, while Mr. Hecht may be disbarred in Nevada, he is licensed to practice in other jurisdictions.

law school, been admitted to practice in multiple jurisdictions, and provided services that were legal in nature were privileged); *United States v. Esformes*, No. 16-20549, 2018 WL 5919517, at *22 (S.D. Fla. Nov. 13, 2018) (citing Florida statute providing that attorney-client privilege applies to communications with "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation"). This "reasonable belief" test applies to corporations and individuals alike. *Id.* at *6 ("To require businesses to continually check whether their in-house counsel have maintained active membership in bar associations before confiding in them simply does not make sense."). Courts will analyze the available evidence to determine whether a client reasonably believed that an unlicensed individual was, in fact, authorized to practice law. *Id.* at *5.

For example, in *Kleeberg v. Eber*, No. 16-CV-9517, 2019 WL 2085412, at *14 (S.D.N.Y. May 13, 2019), an attorney whose license was inactive served as counsel for the defendant company and a personal attorney for defendant executives of the company. *Id.* at *14. To the defendants' knowledge, the attorney was licensed to practice law at all times. *Id.* Plaintiffs contented that, given defendants' advice of counsel defense, they were entitled to communications between the attorney and defendants, and that such communications were not privileged anyways. *Id.* The court disagreed, holding that absent any contradictory evidence showing that defendants knew or should have known that the attorney was no longer licensed to practice law, the available evidence showed, at a minimum, that the defendants reasonably believed the attorney continued to be licensed. *Id.* (citing *Gucci Am., Inc.*, 2011 WL 9375, at *5-6 (it would be unreasonable to require a party to continuously verify whether its attorney was licensed to practice law). Thus, the court rejected plaintiffs' argument that the attorney-client privilege did not apply to communications between defendants and the attorney simply because he was not a licensed attorney. *Id.*

## IV. VOIR DIRE

Defendants are not requesting that the Court ask certain questions. The defendants intend to use their fully allotted 15 minutes.

## V. JURY INSTRUCTIONS

The defendants will file their proposed jury instructions under a separate cover prior to the beginning of trial and in accordance with Chamber's Rules. The defendants will also submit a separate Word version to Chambers.

Dated: July 5, 2023

Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ Andrew P. Young*
Charles G. La Bella
Andrew P. Young
Jordan M. Oliver

Attorneys for Defendants
Sebastian Guthery and
Nine2Five LLC

# CERTIFICATE OF SERVICE

I, Andrew P. Young, hereby certify that the foregoing was filed and served via the CM/ECF System.

Dated: July 6, 2023

*/s/Andrew P. Young*
Andrew P. Young