ANDREW R. HADEN
Acting United States Attorney
MELANIE K. PIERSON
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar Nos. 112520/223317
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976/7951
Email: Melanie.Pierson@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NINE2FIVE, LLC (1),<br>SEBASTIAN GUTHERY (2),<br><br>Defendants. | Criminal Case No. 23CR0179-TWR<br><br>**THE UNITED STATES' SENTENCING MEMORANDUM**<br><br>DATE: October 6, 2023<br>TIME: 9:30 a.m.<br>PLACE: Courtroom 3A<br>JUDGE: Honorable Todd W. Robinson |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Andrew R. Haden, Acting United States Attorney, and Melanie K. Pierson and Joseph J.M. Orabona, Assistant U.S. Attorneys, hereby files its Sentencing Memorandum in the above-referenced case for defendants NINE2FIVE, LLC (NINE2FIVE) and Sebastian Guthery.

/ /

/ /

/ /

## STATUS OF THE CASE

On February 3, 2023, a federal grand jury in the Southern District of California returned an Indictment charging Defendants with conspiracy, illegal importation of merchandise, sale of merchandise imported contrary to law, money laundering, aiding and abetting, and criminal forfeiture. The charges relate to the intentional false declaration of kratom imported from Southeast Asia as fertilizer to avoid seizure by customs officials and to profit from the sale of the substance via websites after it was successfully smuggled into the United States. On July 10, 2023, the day that trial was scheduled to begin, GUTHERY pled guilty to a Superseding Information charging him with Entry of Goods by Means of False Statements, in violation of Title 18, United States Code, Section 542, and NINE2FIVE pled guilty to Count 15 of the Indictment, charging Money Laundering.

## II
## SENTENCING CONSIDERATIONS

Section 3553(a) of Title 18 of the United States Code sets forth the factors that the court must consider when imposing sentence. These factors will be addressed herein, in discussing how the government arrived at its sentencing recommendation.

### A. The Nature And Circumstances Of The Offense And History And Characteristics Of Defendant

Section 3553(a)(1) requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendants. Defendant Guthery pled guilty to importing kratom by falsely declaring it to be fertilizer, in violation of Title 18, United States Code, Section 542. Guthery began importing kratom (*Mitragyna speciosa*) and selling it through his business in Carlsbad, defendant NINE2FIVE, LLC, as early as 2012. Guthery initially operated NINE2FIVE with his business partner, TS, an old friend from Kansas. Guthery handled procurement, while TS handled warehouse operations. TS testified that the firm initially sold K2[1] until K2 came to be treated as a Schedule I controlled substance. They began importing kratom around 2012 because, said TS,

[1] K2, also known as "spice" is a synthetic and potentially dangerous cannabinoid, which was banned by DEA around March of 2011.

"Sebastian wanted a new way to get them high, ah, that people could buy and – and it was not illegal." The kratom was sold primarily over four websites: KratomK, BulkKratomUSA, KratomSourceUSA and GreenLeafKratom, in both powder and capsule forms.




NINE2FIVE was not operated as a normal business. To conceal their business operations, the company had no signage on any of the spaces it rented to identify its location. Business mail was received at rented mailboxes, and employees made daily trips to gather the mail from various mail receiving agencies. To further evade law enforcement detection, Guthery slyly paid employees to receive boxes of kratom at their homes, until the business grew large enough that pallets of kratom were arriving – making home deliveries no longer feasible. Guthery's employees were offered money to open LLCs in their names, which were mere shell companies. These LLCs were used for credit card processing or as consignees for the importation of kratom – another avenue to conceal Guthery's business operations. Drug usage at work was rampant. One witness observed Guthery regularly go through the warehouse and scoop the kratom into his drinks for personal consumption. Guthery's employees were given cash by Guthery or his office manager to party or gamble on weekends. Guthery took employees on vacations to Bali

and invited managers to attend Ayahuasca retreats, where psychedelic drugs were consumed as part of the experience.

In February 2014, the FDA issued Import Alert 54-15, which allowed Customs inspectors to seize or refuse entry of kratom imported for human consumption. The Import Alert stated that kratom was a new dietary ingredient (NDI) for which there was inadequate information to provide reasonable assurance that it did not present a serious risk of illness or injury. TS testified that after the Import Alert, their product was seized at the border. In response, Guthery knowingly and intentionally determined that NINE2FIVE would import the kratom by declaring it as something else besides kratom, including "tea leaves" and "kava kava."

In 2015, Guthery bought TS's share of the business and began operating NINE2FIVE as the sole owner. Guthrey's girlfriend moved to Indonesia to facilitate the shipments of kratom to the United States, although Guthery continued to negotiate directly with the farmers regarding the price and quantity. The product continued to be declared upon entry into the United States as something other than kratom, such as green tea.

After the death of his girlfriend by an overdose of multiple drugs (including kratom) in 2016, Guthery trained another NINE2FIVE employee, AW, to assist with the imports of kratom. AW testified that Guthery directed him work with IH, a disbarred attorney, to set up various companies, which were then used as the consignees to import the kratom. Guthery concealed his ownership of these companies by having the paperwork creating the companies reflect that various NINE2FIVE employees, including AW, were the owners, although the companies were actually controlled by Guthery. AW testified that Guthery directed him not to use specific ports of entry to import the kratom, and to import the product through ports of entry on the East Coast, even though it would be more cost effective to import it in California, to avoid seizure of the product by Customs. The product ultimately arrived in the NINE2FIVE warehouse in Carlsbad.[2] AW stated that Guthery

[2] Some product was initially shipped to a warehouse in Kansas, where it was encapsulated, and then the capsules were shipped to the NINE2FIVE warehouse in Carlsbad.

decided how the product was declared, after consulting with the farmers in Indonesia. According to AW, the farmers in Indonesia shipped kratom to numerous distributors in the United States and shared information regarding what was the best product names other than kratom to use (such as tea) to get the product past U.S. Customs and which ports of entry were seizing the most product. AW recalled Guthery imported the product falsely declared as matcha tea.

AW testified that although Ellie Culp, charged elsewhere, had been hired as Guthery's assistant, Guthery was the person in charge of the bank accounts. AW provided an example, stating that "one time he [Guthery] went on a trip to Indonesia, and he was unavailable for however long it was, two or three weeks, and the business came to a standstill because nobody has [sic] getting paid. You know, he was the guy."

In 2016, Guthery hired JML to travel to Indonesia and arrange shipments of kratom for NINE2FIVE. Thereafter, JML, with the agreement of Guthery, began importing the kratom declared as "Flora Food Botanical Soil conditioner" (fertilizer), and "*Eucheuma spinosum*," (seaweed). When JML told Guthery via Skype that the shipments were to be labeled as "FloraFood Organic Fertilizer," Guthery, demonstrating his knowledge of how his kratom would be mislabeled when imported, responded, "Haha, Good copy!" By omitting any reference of their real intent to import kratom for human consumption, the defendants attempted to avoid having their imported product seized by Customs inspectors.

In 2018, approximately ten containers of kratom purchased by the Defendants were detained by U.S. Customs. Due to the lack of product, the business of NINE2FIVE collapsed. The warehouse in Carlsbad was abandoned by the employees, who obtained work elsewhere. Guthery was able to obtain the release of some of the shipments, after the FDA failed to take regulatory action on the seizures. Guthery again began marketing the kratom through a company called Blue Fedora in Santee. According to JD, the CEO of Blue Fedora, NINE2FIVE was to supply the kratom, and Blue Fedora would do the shipping and processing. JD testified that their agreement was that they would obtain FDA

approval for kratom as a new dietary ingredient. JD stated that he disassociated himself when Guthery told him, “it doesn’t look like this FDA thing is coming through.”

The Internal Revenue Service (IRS) made eleven undercover purchases of kratom from Defendants’ websites in late 2019 and 2020. The websites indicated that the payments made by the IRS were sent to NINE2FIVE, although the payment processing occurred abroad. As a result, the United States was unable to trace the proceeds. The product that was delivered in baggies and in capsule form (proving it was for human consumption) had no labeling indicating it contained kratom. Laboratory analysis confirmed the substance shipped to the undercover IRS agents was kratom. The packages were shipped from Carlsbad or Santee.








To conceal their involvement in these crimes, the Defendants utilized more than 25 DBAs and 50 bank accounts to buy, ship, and sell the kratom. Guthery, who had no other source of income at the time, caused over $17 million to be wired to Indonesia between 2015 and 2018 for the purchase of kratom. Over the course of the conspiracy, the IRS identified $67 million in deposits made to the defendant’s accounts from the unlawful importation and sale of kratom.

**Summary of Deposits**

For Accounts associated with GUTHERY and NINE2FIVE

| Year | Total Deposits |
|---|---|
| 2015 | $8,851,798.74 |
| 2016 | $18,537,367.26 |
| 2017 | $22,303,637.97 |
| 2018 | $18,065,188.07 |
| | |
| | $67,757,992.04 |
| | |
| NOTE: 59 Known accounts | |
| Date: February 2, 2023 | |

This money funded a lavish lifestyle for Guthery. According to the CEO of Blue Fedora, Guthery spent approximately $50,000/month. Employees and associates told investigators that Guthery owned a Maclaren, a Ferrari, a Mercedes G wagon and other expensive vehicles. Guthery purchased a Bentley for his office manager.[3] Guthery purchased a home in La Jolla and travelled extensively. The vehicles and house were sold after the business collapsed in 2018. Guthery also invested heavily in cryptocurrency. While the IRS continues to attempt to trace these assets, no substantial assets have been identified within the United States to date. Guthery, however, faces serious tax deficiencies as a result of the business. For *each* of the tax years 2016-2018, Guthery reported gross income of over $12 million, which nonetheless underreported his income (see chart, above).





Guthery's personal history includes two arrests for driving under the influence (where he pled guilty to misdemeanors), and reports by employees of drug usage by Guthery during the time they worked at NINE2FIVE, including cocaine and heroin. Other employees reported that Guthery frequently consumed kratom at work. For Guthery, his was a life of excess.

Based on the foregoing, the nature and circumstances of the offense, viewed in light of the history and characteristics of the defendant, the government recommends a sentence

[3] Although Guthery formed a company supposedly to rent luxury vehicles, investigators found no evidence that anyone but Guthery had driven the vehicles.

of 12 months and a day in custody, followed by 1 year of supervised release, which is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

### A. <u>The Need For The Sentence To Deter, Protect And Provide Just Punishment</u>

Section 3553(a)(2) requires the court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Kratom is derived from the leaves of an evergreen tree grown in Southeast Asia, including Indonesia. Kratom acts on the opioid receptors. Kratom and kratom-based products produce opioid and stimulant-like effects. Kratom can be chewed, dried, made into a powder, or made into a liquid product. While these kratom-based products are legal and accessible in many areas, some states (Indiana, Wisconsin, Arkansas, Vermont and Rhode Island) and cities, including Oceanside and San Diego, have made it unlawful to sell the substance.

There are no uses for kratom approved by the U.S. Food and Drug Administration (FDA). People who have consumed kratom and kratom-based products have experienced negative side-effects, and even, death – as evidenced by the death of Guthery's girlfriend in 2016. In February 2014, the FDA issued Import Alert 54-15, which allowed Customs inspectors to seize or refuse entry of kratom imported for human consumption. Customs could detain, without physical examination, items containing kratom because the FDA determined kratom was being used as a new dietary ingredient (NDI) for which there was inadequate information to provide reasonable assurance that it did not present a serious risk of illness or injury. Import Alert 54-15 is still in effect today.

Recently, kratom has been the subject of wrongful death lawsuits around the nation. In May, a federal judge awarded a family $4.6 million in damages[4], while in another case the family of a mother of four children in Florida was awarded $11 million after she died from acute intoxication from kratom.[5] A jury in the State of Washington awarded a family $2.5 million this summer in the first kratom wrongful death trial in the United States.[6] Dr. Peter Grinspoon, a physician and cannabis specialist at Massachusetts General Hospital, noted that "there have been some case studies of people getting so addicted to kratom, they've actually needed suboxone to come off it, which is what we use to get people off heroin and oxycodone."[7]

The offense at issue has serious health implications, which pose a danger to the community, and was perpetrated for the sole purpose of commercial profit. Accordingly, a custodial sentence of 12 months and a day is appropriate in this case, both for specific and general deterrence.

**B. <u>The Sentencing Guidelines</u>**

Section 3553(a)(3) requires the court to consider the types of sentences available, while 3553(a)(4) requires the court to consider the applicable guideline range and 3553(a)(5) require the court to consider all applicable Policy Statements. The offense to which Guthery pled is covered by Section 2T3.1. The Base Offense Level is 12, which was determined through the use of Application Note 2, which indicates that the offense level for prohibited or restricted items can be calculated as 25% of the fair market value of the goods. For the charge in the Superseding Information, the invoice value of the goods was $61,728, which converts to a base offense level of 12, using the table at USSG §2T4.1. The parties agree that the base offense level is increased by four levels pursuant to Section 3B1.1 for the defendant's role in the offense, resulting in an Offense Level of 16. After a reduction of

---

[4] www.npr.com, July 24, 2023.
[5] U.S. News and World Report, Health Day, August 1, 2023.
[6] www.npr.com, July 24, 2023
[7] U.S. News and World Report, Health Day, August 1, 2023.

three levels for acceptance of responsibility, the final offense level is 13. The defendant's Criminal History Category is I. An Offense Level of 13 and Criminal History Category I results in a guideline range of 12-18 months of incarceration.

For the corporate defendant, NINE2FIVE, the United States has been unable to identify any corporate assets within the United States that could be used to pay a corporate fine. Accordingly, the parties have agreed, per USSG § 8C2.2, the calculation of a fine range under the Guidelines is unnecessary because there is no evidence that the organization has the ability to pay. The parties agreed that any limited resources NINE2FIVE has should be applied to the Defendants' outstanding tax liabilities, which is believed to exceed $1 million.

In addition to the factors that the court is required to consider under § 3553 (which are discussed herein), § 3572 requires the court to consider: (1) the defendant's income, earning capacity and financial resources, (2) the burden that the fine would impose on the defendant, (3) any pecuniary loss to others as a result of the offense, (4) the amount of any restitution ordered, (5) the need to deprive the defendant of illegally obtained gains, (6) the expected costs to the government of any probation, (7) whether the defendant can pass on to consumers the expense of the fine, and (8) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director or employee responsible for the offense and to prevent a recurrence of the offense. While the defendant claims that his company no longer exists, an internet search conducted today indicates that his websites are still active and offering kratom for sale via the internet.

Given the totality of the circumstances, a sentence of 12 months and one day in custody for Guthery, followed by 1 year of supervised release and payment of a $100.00 special assessment ($400.00 for the corporation), is sufficient but not greater than necessary to achieve the goals of sentencing. NINE2FIVE should be sentenced to three years of probation, under the condition that the company shall not import of sell kratom, or any merchandise containing kratom (*Mitragyna speciosa*), whether under its name, the name of co-defendant Sebastian Guthery, or any other nominees, with the United States during

the period of probation.

### C. The Need To Provide Restitution

No restitution is sought in this case because there are no identifiable victims.

## III

## CONCLUSION

The defendants imported kratom into the United States by falsely declaring it to be fertilizer, not for human consumption. The sole motive was economic, as TS explained, to "get rich." The defendants sold the kratom in capsules, clearly for human consumption in spite of their protestations to the contrary, and reaped large profits. The substance is illegal in San Diego. It poses risks to the health of consumers, who often use the product without any knowledge of possible consequences.

For all of the foregoing reasons, the government respectfully requests that the Court sentence defendant Sebastian Guthery to 12 months and a day in custody, followed by 1 year of supervised release, and a $100.00 special assessment. The Government further requests that the court sentence the organizational defendant to three years of probation, under conditions prohibiting the sale of kratom within the United States, and a $400.00 penalty assessment.

Dated: September 29, 2023.

Respectfully submitted

ANDREW R. HADEN
Acting United States Attorney

s/ *Melanie K. Pierson*
MELANIE K. PIERSON
Assistant U.S. Attorney

/s/ *Joseph J.M. Orabona*
MELANIE K. PIERSON
JOSEPH J.M. ORABONA
Assistant United States Attorneys